UNITED STATES *v.* MALHAMI & CO. (No. 1640). UNITED STATES *v.* WOOLWORTH CO. (No. 1642).[1]

1. EVIDENCE—JUDICIAL KNOWLEDGE.

The court does not judically know that rosaries are not "designed to be worn on apparel or carried on or about or attached to the person."

2. EVIDENCE—COLLECTOR'S CLASSIFICATION PRESUMPTIVELY CORRECT.

Since the evidence does not show that the rosaries at bar are not "designed to be worn on apparel or carried on or about or attached to the person," the collector's classification of them as such articles under paragraph 356, tariff act of 1913, must stand.

United States Court of Customs Appeals, May 23, 1916.

APPEAL from Board of United States General Appraisers, Abstract 38523.

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.

*McLaughlin, Russell, Coe & Sprague,* and *Sharretts, Coe & Hillis* (*Thaddeus S. Sharretts* and *Edward P. Sharretts* on the brief) for appellees.

[Oral argument Feb. 16, 1916, by Mr. Hanson and Mr. Sharretts.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The present appeal involves two protests, the merchandise in each instance being rosaries which were imported under the tariff act of 1913.

The collector assessed duty upon the articles at the rate of 60 per cent ad valorem under the provision for "articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, * * * composed of metal," in paragraph 356 of the act.

The importers protested, claiming assessment of the articles at various alternative rates as manufactures composed in chief value of metal, wood, or other enumerated materials.

The protest was submitted to the Board of General Appraisers, who sustained the same. The Government appealed from this decision.

The present record seems to indicate that the articles now upon appeal are composed in chief value of metal, and it is not denied that they are valued above 20 cents per dozen pieces. The actual competition in the case therefore is between the collector's assessment of the merchandise under paragraph 356, as above set out, and the assessment thereof as proposed by the importers under paragraph 167 of the act as manufactures composed in chief value of metal.

The following is a copy of the two paragraphs just cited:

167. Articles or wares not specially provided for in this section; if composed wholly or in part of platinum, gold, or silver, and articles or wares plated with gold or silver, and whether partly or wholly manufactured, 50 per centum ad valorem: if composed

wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

356. Jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces, 60 per centum ad valorem; rope, curb, cable, and fancy patterns of chain not exceeding one-half inch in diameter, width, or thickness, valued above 30 cents per yard; and articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military, and hair ornaments, pins, powder cases, stamp cases, vanity cases. and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral, or amber, or with imitation precious stones or imitation pearls, 60 per centum ad valorem. Stampings, galleries, mesh and other materials of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any of the foregoing articles in this paragraph, 50 per centum ad valorem.

The record now before the court contains no testimony of any kind whatever, nor are there any samples exhibited in the case. The only information therefore which we possess concerning the character of the merchandise is that which may be derived from its name, from the official statements of the appraiser, and from the collector's assessment upon the same.

The appraiser reported the articles involved in one of the protests to be "rosaries designed to be worn on apparel or carried on or about or attached to the person, composed wholly or in chief value of metal, or of metal set with precious, semiprecious, or imitation precious stones, pearls or imitation pearls, cameos, coral or amber, valued above 20 cents per dozen pieces." In answer to the other protest the appraiser reported the articles to be "rosaries designed to be worn on apparel or carried on or about or attached to the person, composed wholly or in chief value of metal, valued above 20 cents per dozen pieces."

It must of course be assumed in the first instance that the collector's assessment of the merchandise was correct both in fact and law, and the only question in the case is whether the foregoing description of the articles rebuts that presumption, and sufficiently establishes the correctness of the competing assessment proposed by the importers.

The importers contend that rosaries are not "designed to be worn on apparel or carried on or about or attached to the person" in like manner with the articles which are enumerated as examples in paragraph 356. In this connection the importers' counsel say:

Rosaries are a class of articles that stand all alone. They are separate and distinct from all other descriptions of merchandise, and are intended solely for devotional purposes, never for display. Indeed to make a display of them would defeat the very

purpose for which they are intended. They are always carried in some hidden receptacle, such as the pocket, reticule, or prayer book, and are only used during prayers. The rosaries in question are wanting in all of the essential particulars required by the Court of Customs Appeals in the case of United States *v.* Gallagher & Ascher (T. D. 35343), *supra*, to bring them within the provision of paragraph 356 for other articles, and hence are not included therein.

The importers must, of course, depend upon "common knowledge" as the basis of their foregoing statements, since the only other source of information in the present case is the appraiser's report above referred to, which distinctly contradicts these statements. In coming to ascertain the uses of rosaries which are within common knowledge, we give the following definitions of the term taken from approved dictionaries:

Standard:

*Rosary.*—A string of beads for keeping reckoning or count of devotions, as among the Mohammedans, Buddhists, and certain bodies of Christians; also, a similar string worn on the person for ornament or for fingering in pastime. 2. R. C. Ch. (1) Specifically, a string of beads used in devotions for counting a specific series of prayers, each bead having the name of the prayer it represents, aves being signified by small beads and the paternoster and gloria by a large one.

The rosary is made up of groups called decades, of which the common or *Dominican rosary* contains 15, each decade containing 10 aves preceded by a paternoster and followed by a gloria. The decades are commonly joined to 3 aves and a paternoster and a cross or medal, on which the Apostles' Creed its recited. The rosary is also divided into three divisions of five decades each, called *chaplets* or *coronæ*. The term *lesser* rosary is applied also to a chaplet.

\*　　　\*　　　\*　　　\*　　　\* ·　　　\*　　　\*

(2) The series of prayers commonly recited on these beads, arranged in a definite order and consisting of aves, paternosters, and glorias, each decade commemorating a scene from the life of Christ and the Virgin Mary. \* \* \*

Century:

*Rosary.*—5. A string of beads carried about the person, either for mere pastime, as to occupy the fingers, or for reckoning, especially in numbering the prayers offered up at fixed times of the day.

Mohammedans carry rosaries with them for both these purposes, wearing them in the girdle or carrying them in the hand at all hours of the day.

6. Specifically, in the Rom. Cath. Ch. (b) A string of beads of various sizes representing the same number of aves, paternosters, and glorias, respectively, used for marking off these prayers. \* \* \*

It will be observed that each of the foregoing definitions of rosaries states that there are some rosaries which are carried upon the person either for ornament or for mere personal convenience by way of occupying the fingers. The definitions are sufficient authority for the conclusion that within common knowledge some articles bearing the name of rosaries are worn upon the person for mere personal convenience and adornment. This conclusion finds additional support in the statement made by the appraiser that some of the present

articles are set with precious or semiprecious stones, or with imitations thereof. In the face of the foregoing definitions and of the appraiser's reports we do not feel authorized to say that articles bearing the name of rosaries are "always carried in some hidden receptacle, such as the pocket, reticule or prayer book, and are only used during prayers." And if it be true, as stated by the foregoing definitions and also by the appraiser, that certain forms of rosaries are in fact designed to be worn upon the person for mere personal convenience and adornment, we think that such articles would be within the descriptions of paragraph 356, under which the present merchandise was assessed. In such case the present articles should be assessed under that paragraph unless they be found to be more specifically described by some other provision of the same act. It is, however, at once apparent that the provisions of paragraph 356, *supra*, are more specific in their application to such merchandise as comes within them than the general provisions of paragraph 167 for articles composed in chief value of metal.

We therefore conclude that the present record does not sustain the action of the board in setting aside the collector's assessment of the articles now in question.

At the oral argument of the case the Government insisted that the present protests were defective because of multifariousness and contended that the same should be overruled for that reason. We may say upon this subject that the various alternative claims in the protest are mostly confined to the question as to what is the component material of chief value in the articles. In the absence of more specific information concerning the different materials of which the articles in question are composed we can not say that the importers' claims in that behalf were multifarious.

In the Government's brief it is claimed that in case the present articles are found to be outside of paragraph 356, *supra*, they should be assessed as articles composed in chief value of beads under paragraph 333 of the act. Upon this subject, however, we may say, in addition to what has already been said, that there is no proof in the record that the present articles are composed in chief value of beads.

In accordance with the foregoing views the decision of the board is *reversed.*