**J. ORLANDO CO., Inc., et al.**

v.

**UNITED STATES.**

Protests Nos. 307348–K, etc., C.D. 2114.

United States Customs Court,
Second Division.

Sept. 15, 1959.

John D. Rode, New York City (Ellsworth F. Qualey, New York City, of counsel), for plaintiff.

George Cochran Doub, Asst. Atty. Gen. (Henry J. O'Neill, Washington, D. C., and Richard E. FitzGibbon, New York City, trial attorneys), for defendant.

Before LAWRENCE, RAO, and FORD, Judges.

LAWRENCE, Judge.

A number of importations of rosary bracelets covered by the protests enumerated in the schedule attached to and made part of this decision, which cases were consolidated for trial, were classified by the collector of customs as articles or wares not specially provided for, plated with silver on metals other than nickel silver or copper, but not in chief value of silver, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C.A. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas.Dec. 305, T.D. 51802, and subjected to duty at the rate of 35 per centum ad valorem.

It is the contention of plaintiffs that the rosary bracelets in controversy should properly have been classified as rosaries, chaplets, and similar articles of religious devotion within the purview of paragraph 1544 of the Tariff Act of 1930 (19 U.S.C.A. § 1001, par. 1544), as modified by the General Agreement on Tariffs and Trade, supra, and by the Torquay protocol to said general agreement, 86 Treas.Dec. 121, T.D. 52739, which provides a rate of duty for such articles of 15 per centum ad valorem.

We here set forth the pertinent provisions of the statutes—

Paragraph 397, as modified by the General Agreement on Tariffs and Trade, supra:

"Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*

"Plated with silver on metals other than nickel silver or copper, but not in chief value of silver.............35% ad val."

Paragraph 1544, as modified by the general agreement, supra:

"Rosaries, chaplets, and similar articles of religious devotion, of whatever material composed (except if made in whole or in part of gold, silver, platinum, gold plate, silver plate, or precious or imitation precious stones), regardless of value.........15% ad val."

Paragraph 1544, as modified by the Torquay protocol, supra:

"Rosaries, chaplets, and similar articles of religious devotion: Made in whole or in part of gold, silver, platinum, gold plate, silver plate, or precious or imitation precious stones............15% ad val."

The testimonial record in this case consists of the testimony of three witnesses who appeared on behalf of plaintiff and two for the defendant.

The first of plaintiffs' witnesses was James J. Orlando of the firm of The J. Orlando Co., Inc., importer of religious articles of the Roman Catholic faith, consisting of statuary, marble and wood carvings, rosaries, religious medals on chains, and religious novelties. He stated that he was familiar with the rosary bracelets before the court and identified a sample thereof, which was received in evidence as plaintiffs' exhibit 1.

It consists of a silver-plated chain with 11 imitation pearl beads, the last bead being separated from the other 10 by a longer section of chain, a connecting ring and clasp, and an Immaculate Conception medal and a crucifix.

Orlando stated that this article is sold to religious stores, religious jobbers, and dealers throughout the United States as a rosary bracelet and that he has actually seen articles like exhibit 1 used by individuals in the Catholic Church and in subways for the purpose of keeping count of the prayers in the rosary.

He testified that a rosary is a string of beads used to keep count of prayers

and that Roman Catholics, of which he is one, regard the rosary as a sequence of prayers in honor of the Blessed Virgin, consisting of 15 decades, each decade of 10 Hail Marys preceded by an Our Father and ending with a Gloria Patri. During the recitation of a decade, the person praying is to meditate on one of the Fifteen Mysteries, which is the reason why there were originally 15 decades.

He stated that normally a member of the Roman Catholic faith uses a 5-decade rosary, consisting of 59 beads, with a prayer said on each of the beads.

A pamphlet explaining the prayers to be said on the 59-bead rosary was introduced in evidence as plaintiffs' illustrative exhibit 2.

The witness testified that there were various kinds of rosaries, in his experience, some of which are the Infant of Prague, a chaplet of 15 beads; the St. Ann chaplet of 18 beads; and the St. Anthony chaplet of 42 beads. Samples of said rosaries were introduced in evidence as plaintiffs' collective illustrative exhibit 3. A 59-bead rosary was introduced in evidence as plaintiffs' illustrative exhibit 4 to illustrate the standard type of rosary used by Catholics. This rosary contains 5 decades, each decade consisting of 10 Hail Mary beads and a bead separated from the series of 10, for the Our Father prayer.

It was Orlando's testimony that the purpose of all rosaries was to keep count of prayers being recited in honor of the Blessed Virgin or other saints.

In comparing the arrangement of beads in exhibits 1 and 4, the witness stated that exhibit 1 contained one decade for the Hail Mary prayers and a separate bead for the Our Father prayer, or one-fifth of the standard rosary represented by exhibit 4.

The witness said rosaries were composed of various materials, including silver and gold with beads of wood, plastic, glass, or precious metals, and of various degrees or ornateness.

Catalogs of two manufacturers of religious goods, William J. Hirten and Frederich Singer & Sons, were introduced in evidence as plaintiffs' collective illustrative exhibit 5 to show that articles like exhibit 1 were offered in the trade as rosary bracelets.

The witness then stated that he had never seen articles like exhibit 1 on sale in a jewelry store nor had he heard them referred to as jewelry.

On cross-examination, it was the witness' testimony that a rosary bracelet would not be a good delivery for an order for a regular rosary of 59 beads or for a rosary of any of the types found in illustrative exhibit 3. The witness stated that the rosary bracelet is dedicated to the Blessed Mother, the Mother of God. He stated that this article is worn by females on the wrist on all occasions. He identified a booklet of instruction, issued by the Roman Catholic Church for the recital of the rosary, which was received in evidence as defendant's exhibit A.

On redirect examination, the witness testified that, in view of the arrangement of the beads in exhibit 1 and the presence of the medal and crucifix, it was his opinion that the article is worn to say the rosary when "you have the opportunity to do so" and that by repeating the prayers on the beads five times the entire rosary has been said.

In response to questions by the bench, the witness stated that a chaplet has a lesser number of beads than a rosary. He also stated that rosaries are sometimes worn about the neck and sometimes carried in the pocket. The witness said that the rosary bracelet, exhibit 1, provided an inconspicuous and convenient means of reciting the rosary and that, in his opinion, such bracelets were not worn for ornamentation but simply to have the beads available when the opportunity arose to say the rosary.

Edward O'Toole, plaintiffs' second witness, testified that he is president of the Edward O'Toole Co., dealer in Catholic publications and religious articles of all kinds, including pious articles and sacramentals; that he has been in business for 37 years, selling merchandise all over

the United States; and that his company is one of the leading dealers in religious articles.

He stated that he would testify substantially in the same manner as Orlando, if the same questions were asked of him. It was then stipulated by adversary counsel that the testimony of O'Toole, as well as that of Edna Sharkey, an operator of a religious articles store at 334 Park Avenue, New York City, would be substantially the same as Orlando's in both direct and cross-examination and in response to questions put by the court.

Arthur Klein, witness for the Government, stated he has been with G. Klein & Son, a manufacturer and importer of religious articles relating to the Roman Catholic faith, for 35 years; and that his company is one of the largest in the field. His company manufactures articles like exhibit 1, and he has seen such articles worn by women in hotels and elevators, but had not seen them used. The witness admitted, in response to a query by the court, that the article has religious significance.

The Government's second witness, Rev. Joseph P. O'Brien, a Roman Catholic priest for 13 years, testified that exhibit 1 would not be accepted as a rosary by the Roman Catholic Church; and that the Church defines a rosary as a series of beads of Our Fathers and Hail Marys, comprising 5, 10, or 15 decades made of durable material. The Church grants indulgences for the recitation of the rosary on beads of 5, 10, or 15 decades only, and the indulgences would not be given to an article such as exhibit 1, although it would be blessed as a religious article and, in that sense, might have some indulgence, but not in relationship to it as a rosary.

On cross-examination, the witness testified that other types of rosaries, such as the Infant of Prague rosary, would be recognized but that they are not considered rosaries by the Church and would not receive the indulgences attached to the saying of the rosary by means of a 5-, 10-, and 15-decade rosary. He did not agree with the definition from the Funk and Wagnalls New Standard Dictionary, 1942 edition, of the word "rosary" as a string of beads for keeping reckoning or count of devotions insofar as the Church would define it. He admitted that the primary purpose of the rosary is for the purpose of keeping count of prayers and that there is nothing in the tenets of the Catholic Church which prevents a member from saying prayers in honor of the Virgin Mary in any other way than by means of a rosary.

In response to questioning by the court, the witness testified that exhibit 1 could be used for religious purposes to say the same prayers as on a rosary, but it would not carry the indulgences of a rosary as described by the Holy See.

There are three points raised in plaintiffs' brief, namely:

1. That a rosary bracelet is a rosary or chaplet within the common meaning of those terms,

2. It is immaterial to the determination of this case whether exhibit 1 is recognized by the Roman Catholic Church as a rosary, and

3. Without conceding that exhibit 1 is not a rosary or chaplet, a rosary bracelet is a "similar article of religious devotion" for tariff purposes.

■ It is so well established in customs law that the language of a provision of the tariff act is, in the absence of compelling reasons to the contrary, to be construed according to its common meaning that citation of cases is unnecessary.

Reference to lexicographic authorities reveals the following definitions of "rosary" and "chaplet":

Funk & Wagnalls New Standard Dictionary of the English Language, 1942:

"rosary. * * * 1. A string of beads for keeping reckoning or count of devotions, as among the Mohammedans, Buddhists, and certain bodies of Christians; also, a similar string worn on the person for ornament or for fingering in pastime. 2. *R. C. Ch.* (1) Specif., a

string of beads used in devotions for counting a specific series of prayers, each bead having the name of the prayer it represents, aves being signified by small beads, and the paternoster and gloria by a large one.

"The rosary is made up of groups called decades, of which the common or **dominican rosary** contains 15, each decade containing 10 aves preceded by a paternoster and followed by a gloria. The decades are commonly joined to 3 aves and a paternoster and a cross or medal, on which the Apostles' Creed is recited. The rosary is also divided into 3 divisions of 5 decades each, called *chaplets* or *coronae*. The term **lesser rosary** is applied also to a chaplet."

"**chaplet,** *n.* **1.** A wreath or garland for the head; a coronal. **2.** *R. C. Ch.* A rosary, or, more strictly, the third part of a rosary, or fifty-five beads. See ROSARY.

"The *chaplet* de roses placed on the statutes of the virgin (shortly called a rosaire, or rosary), came later to mean a sort of chain, intended for counting prayers, made of threaded beads, which at first were made to resemble the *chaplets* of the Madonna. **3.** A string of beads, * * *."

Webster's New International Dictionary of the English Language, second edition, 1953:

"**rosary** * * *. **3.** A string of beads used in counting prayers; specif., a string of beads by which the prayers of the rosary (sense 4a) are counted, or a shorter string on which five of its fifteen divisions are said. Cf. CHAPLET, 5. **4.** *Eccl.* [*cap.*] **a** A form of devotion to the Virgin Mary consisting of fifteen decades of Ave Marias, each of which, preceded by a Pater Noster and ended with a Gloria Patri, is said while meditating on a mystery * * *. **b** Any similar form of de-

votion; as, the *Rosary* of the seven Dolors of Mary."

"**chaplet** * * *. **2. a** A string of beads; * * *. **5.** *R. C. Ch.* A third of a rosary, or 55 (sometimes 59) beads, used in praying; also, the prayers recited over this."

The essence of the foregoing dictionary definitions is that a rosary or a chaplet is a string of beads for keeping reckoning or count of prayers. The testimony of plaintiffs' well-qualified witnesses in this case is that the rosary bracelets, represented by plaintiffs' exhibit 1, are used solely for the purpose of keeping count of prayers, which testimony stands uncontradicted.

Predicated on the common meaning of the terms and the testimonial record, we are of the opinion that the rosary bracelets in issue come within the statutory provision for rosaries or chaplets in paragraph 1544 of the tariff act, as modified, supra.

Prior judicial construction of the predecessor paragraph to paragraph 1544 of the present tariff act clearly indicates that the articles therein covered are not to be considered as relating only to articles used by the members of any particular religion. Reference is made to the case of Benziger Bros. v. United States, 14 Ct.Cust.App. 270, T.D. 41883, wherein the classification of crucifixes, measuring in length from 1¼ inches to 1¾ inches, was before the court. In overruling the contention that said articles were "similar articles of religious devotion" in the then-prevailing tariff provision, the court stated—

"Importer protested the collector's assessment which, upon hearing by the Board of General Appraisers, now the United States Customs Court, was overruled, although the board expressed the belief that the merchandise was within the provision for 'similar articles of religious devotion' as that term is used in paragraph 1446. It felt constrained, however, by reason of the decision of

this court in United States v. Closson Co., 12 Ct.Cust.App. 470, to overrule the protest. The issue, therefore, is under which of the two paragraphs the merchandise is dutiable. If the crucifixes are articles of religious devotion similar to rosaries and chaplets, the protest should be sustained.

"A similar question was fully considered in the Closson case and does not require an exhaustive review here. In that case it was held in substance that the primary purpose of rosaries and chaplets was not to incite religious devotion but that they were designed to keep a reckoning of the prayers said.

"The common meaning of the words 'rosary' and 'chaplet' as applied to articles used in religious exercises, according to lexicographers, is a string of beads used for keeping count of the prayers which are said by those who use them, and that is the meaning recognized by this court. United States v. Malhami & Co., 7 Ct.Cust.App. 175; Kennedy & Sons v. United States, 12 Ct.Cust. App. 347; United States v. Closson, supra."

Further in its decision in the Benziger case, the appellate court said—

"Importer introduced some evidence tending to show that the *primary* object or purpose of rosaries and chaplets as used in the Roman Catholic Church is to incite religious devotion and that the *secondary* object or purpose thereof is to keep a count of the prayers said therein.

"We are not inclined to the view that this evidence can be allowed to change the ordinary meaning of the words "rosaries" or "chaplets" as used in the statute. The use of such articles is not limited to the church of Rome nor is there anything to indicate that paragraph 1446 is to be construed as relating only to articles used by the communicants or adherents of that church. * * *" [Italics quoted.]

The fact that, according to defendant's witness, Father O'Brien, a rosary bracelet such as exhibit 1 in this case would not be endowed with the indulgences attached to a rosary within the ritual of the Roman Catholic Church, although admittedly a religious article, cannot, in the light of the Benziger case, supra, preclude a holding that said article used for counting or reckoning prayers is, nevertheless, a rosary or chaplet within the common acceptation of these words.

Even were we to take the position that the rosary bracelets in issue are not rosaries or chaplets, within the purview of paragraph 1544 of the Tariff Act of 1930, on the ground that they do not contain the 15 decades usually constituting a rosary or the 5 decades ordinarily comprising a chaplet, we would be led to the conclusion that a rosary bracelet, consisting of 1 decade and used for the identical purpose of a rosary or chaplet, namely, the counting or reckoning of prayers, is without question a "similar article of religious devotion."

Upon the record before the court, we hold that the rosary bracelets in issue should properly have been classified as rosaries, chaplets, or similar articles of religious devotion in paragraph 1544 of the Tariff Act of 1930, as modified, supra, and subjected to duty at the rate of 15 per centum ad valorem, as alleged by plaintiffs. The claim in the protests to that effect is, therefore, sustained. All other claims are overruled.

Judgment will issue accordingly.